IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL GALE LADD,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | NO.   12-4553 |
| **Commissioner of Social Security,** | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                              August 26, 2013

Plaintiff Michael Gale Ladd brings this action under 42 U.S.C. § 405(g) to obtain review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1381. Ladd has filed a Request for Review (Doc. No. 9), Defendant has filed a Response (Doc. No. 10), and Ladd has filed a Reply (Doc. No. 12). The matter is before me for a Report and Recommendation.

For the reasons set forth below, I respectfully RECOMMEND that Ladd's request for review be DENIED.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Ladd was thirty-seven years old at the time of the Commissioner's decision in this case. (R. 19.) He dropped out of high school in the tenth grade, but later earned his GED. (R. 408, 27.) He lives with his parents. (R. 28.) He has past relevant work history as a video store clerk and as a security guard. (R. 43-47.)

Ladd's original application for Title II benefits was denied at the initial level on August 22, 2006. (R. 10.) He filed a second claim on February 21, 2007, which was denied following a hearing on June 23, 2008, and he did not appeal. *Id.* On February 18, 2009, Ladd filed a third application for SSI and DIB alleging an onset date of July 16, 2005. (R. 145.) Following a hearing, the ALJ issued an unfavorable decision on August 27, 2010, finding that Ladd had the residual functional capacity ("RFC") to perform a significant number of jobs that exist in the national economy (R. 10-20.) Plaintiff requested review by the Social Security Appeals Council, which affirmed the decision of the ALJ. (R. 1.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The Court may enter judgment affirming, modifying or reversing a decision of the Commissioner, with or without remanding the case for rehearing. *Id.*

The Court exercises plenary review of all legal issues decided by the Commissioner. *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 431 (3d. Cir. 1999). "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986). Thus, the Court's review is limited to determining whether the correct legal standard was applied and whether "substantial evidence" exists in the record to support the decision of the ALJ. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399

F.3d 546, 552 (3d Cir. 2005); *Schaudeck*, 181 F.3d at 431.

Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kangas v. Bowen*, 823 F.2d 775 (3d Cir. 1987); *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartfanft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *see also Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). It is more than a scintilla, but somewhat less than a preponderance of the evidence. *Id.* Importantly, the Court must not weigh the evidence, nor may the Court substitute its own conclusions for those of the factfinder. *Rutherford*, 399 F.3d at 552 (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

  B.  **Establishing Disability Under the Social Security Act**

Under the Social Security Act, a claimant is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505. The Commissioner's regulations provide a five-step sequential evaluation process to determine whether a claimant is under a disability. 20 C.F.R. § 416.920(a)(4). The first inquiry is whether the claimant is engaged in substantial gainful activity; if so, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step is to determine whether he has one or more impairments that are "severe." 20 C.F.R. § 416.920(a)(4)(ii). If the claimant is found to have one or more severe impairments, the third step is to determine if the impairments

meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is presumed disabled without further inquiry. *Id.* If the claimant fails to meet a or medically equal a listing, step four dictates that the claimant's past relevant work be evaluated as well as his RFC. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant's impairments prevent him from performing his past relevant work, step five is to determine if other work exists in significant numbers in the national economy that accommodates the claimant's RFC and vocational factors. 20 C.F.R. § 416.920(a)(4)(v). If such work exists, the claimant is not disabled.

### III. THE ALJ'S DECISION

Ladd alleges that he is disabled due to schizophrenia, depression, chronic pain, and other impairments. (R. 188.) The ALJ proceeded through the sequential evaluation process and made the following findings:

1. Ladd met insured status through March 31, 2010.

2. Ladd has not engaged in any substantial gainful activity since July 16, 2005, the alleged onset date. *See* 20 C.F.R. § 416.971 *et seq*.

3. Ladd has the following severe impairments: right shoulder disorder, obesity, major depressive disorder, and anxiety disorder (NOS). *See* 20 C.F.R. § 404.1520(c). Additional impairments, including diabetes mellitus, hypothyroidism, and hypertension with reported syncope, were considered and found to be less than severe.

4. Ladd does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1525, 404.1526, 416.920(d).

5. Ladd has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he must never climb

>>ropes/ladders/scaffolds; he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; and he must avoid even moderate exposure to hazards (heights, moving machinery, sharp edges). Due to his mental impairments, he is limited to simple, routine tasks and goal-oriented rather than production-paced tasks; with no interaction with the general public and occasional interaction with supervisors and co-workers; and he requires a stable workplace with few, if any changes of setting, processes, and tools.

6. Ladd is unable to perform any past relevant work. *See* 20 C.F.R. §§ 404.1565 and 416.965.

7. Ladd was born on January 5, 1973 and was thirty-two years old, which is defined as a younger individual aged 18-44, on the alleged disability onset date. *See* 20 C.F.R. §§ 404.1563 and 416.963.

8. Ladd has at least a high school education and is able to communicate in English. *See* 20 C.F.R. §§ 404.1564 and 416.964.

9. Transferability of job skills is not material to the determination of disability. *See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

10. Considering Ladd's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. *See* 20 C.F.R. §§ 404.1569(a) and 416.969(a).

(R. 12-19.) Thus, the ALJ reached step five of the five-step sequential evaluation and found that Ladd was not disabled. (R. 20).

## IV. DISCUSSION

In his Request for Review, Ladd contends that the ALJ's decision was erroneous because: (1) the ALJ did not weigh the medical opinion evidence according to the correct legal standards; (2) the ALJ misapplied the Commissioner's regulations in evaluating Ladd's credibility; and (3) the ALJ erred in finding that Ladd's schizoaffective disorder was not a severe impairment. In my review of Plaintiff's claims, I considered the various sources of medical

evidence, the submissions of counsel, the testimony at the administrative hearings, and the ALJ's decision.

### A.     The ALJ's Weighing of the Medical Opinions in the Case

"The Social Security Act defines 'disability' in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace." *Heckler v. Campbell*, 461 U.S. 458, 459-460 (U.S. 1983). The determination of disability is an administrative finding that is reserved for the Commissioner and not any particular medical source. 20 C.F.R. § 404.1527(d)(1). When determining disability the ALJ has a duty to apply the correct legal standard. *Greene v. Barnhart*, 2006 U.S. Dist. LEXIS 42922 (E.D. Pa. 2006) (citing *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)). When evaluating medical opinion evidence, the ALJ decides how much weight to give to an opinion based on factors listed in the Commissioner's regulations, such factors including whether a physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

#### 1.     The therapist's opinion

I conclude that the ALJ correctly applied the applicable law when he rejected the opinion evidence provided by Ladd's therapist, Mindy Biddle, M.A., as being unsupported by medical findings and inconsistent with the record as a whole. (R. 18.) Biddle began providing individual therapy services to Ladd on June 4, 2008. (R. 319-323, 418.) She met with Ladd on a weekly basis, and her therapy notes are a part of the record. (R. 333-395.) Shortly after Ladd's administrative hearing, Biddle filled out a Medical source Statement of Ability to Do Work-related Activities (Mental) dated June 8, 2010. In her assessment, Biddle stated that Ladd's

6

mental impairments caused extreme limitations (defined as no useful ability to function) in his ability to interact appropriately with the public, supervisors, or co-workers, or to respond appropriately to usual work situations and to changes in a routine work setting. (R. 418.)  Biddle stated that she based this assessment on her observations of Ladd "interact[ing] with others in our waiting room and in the elevator" and on Ladd's "past reports of when he is around others." (R. 418.)  She stated that being around other people causes Ladd "extreme anxiety" that is evidenced by his "excessively rubbing his hands" and that he has experienced visual and auditory hallucinations in the waiting room.  *Id.*  She further stated that, "This is something that we have tried to work on, but there has been minimal progress." *Id.*

As Biddle was not a "treating source" under the Commissioner's regulations, her opinion may not be given controlling weight.[1]  *See* SSR 06-03p, 2006 SSR LEXIS 5, at *3-4 ("only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight").  Nevertheless, "other sources" may be considered "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4.  When considering the opinions of "other sources" the ALJ may use the same factors that apply to "acceptable medical sources," including supportability and consistency. *Id.* at *5-6.  The ALJ considered Biddle's assessment and rejected it because it was unsupported by medical evidence and was inconsistent with the

---

[1] Ladd concedes that Biddle is not a treating source.  Ladd's Brief at 7.  The Commissioner's regulations distinguish between "acceptable medical sources" and "other sources." *Compare* 20 C.F.R. § 404.1513(a) *with* § 404.1513(d).  Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 404.1513(a).  Other sources include therapists, such as Biddle, who has an M.A. in Community Counseling.  *See* 20 C.F.R. § 404.1513(d); (R. 420).

record as a whole. Therefore, he applied the correct legal standard. Furthermore, I find that this determination is supported by substantial evidence.

Biddle's assertion that "there has been minimal progress" undermines the credibility of her assessment because the record is replete with substantial evidence that Ladd has made progress in his treatment. In a treatment plan dated April 1, 2010, Biddle stated that "[Ladd] has shown a lot of progress in therapy even though this therapist is not sure if he is actually aware of the progress he has made. . . [Ladd] still has a lot of work to do in this area but the progress is impressive." The record contains dozens of therapy notes from Ladd's sessions with Biddle, and these notes frequently documented that Ladd made progress, and that his social anxiety symptoms were less than extreme. As examples, Biddle's notes show Ladd:

- socializing with his brother and cousin (R. 385-386.)
- feeling better and less paranoid in social situations (R. 380, 384.)
- felt that the therapy sessions were really helpful (R. 371.)
- was content and satisfied and improving his social skills (R. 360, 363, 401.)
- relieved and happier with an elevated mood (R. 356.)
- was satisfied with life (R. 347.)
- was more comfortable with shopping and socializing (R. 341, 343.)
- developed an ongoing, six-month relationship with woman online in schizophrenic support group (R. 339.)
- shopping, socializing with family, enjoying interactions with others, improving his social skills (R. 346.)
- doing very well, enjoying experiencing more feelings (R. 350.)

This list is just a representative sample, and many more examples could also be used to show

8

that Biddle's therapy notes reflect that Ladd made good progress.

Biddle's assessment is also not consistent with the treatment records of Ladd's treating psychiatrist, Letitia Covaci, M.D. Dr. Covaci first evaluated Ladd on June 27, 2008. Dr. Covaci noted that Ladd was suffering from hallucinations, depression, anxiety, panic attacks, and other symptoms. (R. 407.) Ladd was alert and cooperative, and his memory, judgment, and insight were all fair to good. (R. 408.) Dr. Covaci assigned him a GAF[2] score of 50 to 55 and prescribed Prozac, Geodon, and Ambien. (R. 408.) At a follow up visit on August 20, 2008, Ladd reported that he was "feeling better." (R. 403.) He was dealing with fewer hallucinations, less anxiety, and less paranoia, and his judgment and insight were improving. *Id.* Dr. Covaci raised his GAF score to 60 to 65.[3] *Id.* Ladd continued to see Dr. Covaci approximately every two months. The treatment notes repeatedly reference Ladd's difficulties with social anxiety and paranoia. (R. 291, 395, 399, 401, 415.) Nevertheless, his GAF scores are consistently 60-65, and his memory, judgment, and insight are consistently good. (R. 289, 291, 395-415.) The most recent treatment note in the record is dated May 6, 2010, shortly before Ladd's administrative hearing. (R. 395.) While he still had difficulties with social anxiety, he was "actually feeling all right." He spent time with family and was encouraged to try to go out more often. He was well

---

[2] "GAF" stands for "Global Assessment of Functioning." A GAF score rates overall psychological functioning on a scale of 0 to 100. A score of 41 to 50 indicates serious symptoms or serious impairment of social, occupational, or school functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 32-35 (4th ed., text rev. 2000). A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34.

[3] A GAF score of 61-70 indicates a patient who has mild symptoms or some difficulty with social, occupational, or school functioning, but who generally functions pretty well. DSM-IV-TR at 34.

groomed, relaxed, and alert.  He denied any psychotic symptoms, and he had a GAF score of 65.[4]
Thus, Biddle's assessment of extreme limitations is not consistent with Dr. Covaci's treatment notes.

Biddle's assessment is also inconsistent with the record in that it relied on Ladd's hallucinations as a basis for concluding that he would be extremely limited.  On the questionnaire that Biddle filled out on June 8, 2010, she identified hallucinations as a factor that supported her assessment.  According to the medical records, however, the last date on which Ladd had experienced a hallucination was October 13, 2009, when Ladd reported that he had heard voices, but was aware that they were not real.  (R. 363.)  Subsequently, Ladd reported multiple times that he was free of hallucinations.  (R. 344, 359, 397, 399.)  Accordingly, I conclude that substantial evidence in the record supports the ALJ's decision to reject the assessment of extreme limitations provided by Biddle.

### 2.     The non-examining state agency consultants

The ALJ gave great weight to the opinions of two nonexamining state agency consultants

---

[4] Dr. Covaci's signature also appears on the April 1, 2010 treatment plan, which provides a current GAF score of 50 and a highest prior year score of 50. (R. 325.)  This would apparently contradict Dr. Covaci's last Progress Note prior to Ladd's administrative hearing, as well as all of her progress notes from the prior year.  *See* (R. 395-401.)  However, a review of the treatment plan indicates that while Dr. Covaci signed the document, it was actually prepared by Biddle.  At the end of the treatment plan there is a notation that states, "Updated by: Mindy Biddle, M.A.," followed by the signatures of Ladd, Dr. Covaci, and Biddle.  (R. 329.)  Furthermore, it appears that Biddle merely copied parts of this treatment plan, including the GAF scores, from a December 1, 2008 version of the treatment plan.  *Compare* (R. 285-288) *with* (R. 325-328.)  Many of the textual portions of the two treatment plans are word-for-word identical, except that the dates had been changed.  For example, in both versions of the treatment plan, the section labeled "Progress on Long Term Goal #1" begins with, "This therapist began seeing Michael in the beginning of July."  (R. 287, 327.)  Thus, this document does not reliably indicate that Dr. Covaci suddenly lowered Ladd's GAF score in 2010.

who provided assessments of Ladd's RFC.  "State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation," and ALJs must consider their evaluations as valid opinion evidence.  20 C.F.R. § 404.1527(e)(2)(i).  The ALJ will evaluate a nonexamining source's opinion using the relevant factors listed in 20 C.F.R. § 404.1527.  Furthermore, the ALJ must explain in his decision the weight given to the nonexamining source's opinion.  20 C.F.R. § 404.1527(e)(2)(ii).

Lawrence Awalt, M.D., an internal medicine specialist, reviewed Ladd's medical records and found that Ladd's diabetes mellitus, hypothyroidism, and hypertension were all non-severe, and that his obesity was non-severe in the absence of other significant physical problems.  (R. 293, 314.)  These findings are consistent with the record, which do not show evidence that Ladd frequently complained of or sought treatment for these physical conditions.[5]   Ladd does not assert that the ALJ made any error in evaluating his physical symptoms.

Maryanne Bongiovani, Ph.D., a psychologist, reviewed Ladd's medical records and concluded that Ladd suffered from major depressive disorder and anxiety disorder.  (R. 295-303.)  Her report was dated April 14, 2009.  Dr. Bongiovani concluded that Ladd suffered from mild restrictions in activities of daily living, moderate limitations in social functioning, moderate limitations in maintaining concentration, memory, and pace, and no episodes of decompensation.  (R. 304.)  Assessing Ladd's RFC, Dr. Bongiovani concluded that Ladd would be markedly

---

[5]  Dr. Awalt did not directly address Ladd's right shoulder pain, as the record did not contain significant evidence that this was a severe problem.  Nevertheless, the ALJ concluded that Ladd suffered from a severe impairment of right shoulder disorder, based on Ladd's complaints and medical records indicating that he sought treatment in February 2008 and November 2008.  (R. 13.)

limited in his ability to interact appropriately with the general public, and moderately limited in his ability to maintain attention and concentration, work with other people without becoming distracted, and complete a normal workweek without interruptions or an unreasonable number of rest periods. (R. 308-309.) She found no other significant limitations.

Dr. Bongiovani's assessment was supported by the medical evidence and consistent with the record. In Dr. Covaci's most closely contemporaneous progress note, dated March 27, 2009, Ladd had a GAF score of 60 to 65. (R. 415.) He reported "hav[ing] less bad thoughts" and feeling better with medication. He denied psychotic symptoms or thoughts of hurting himself or others. He struggled with social anxiety. He reported increased control over his thinking. He was neat, well groomed, alert, and cooperative. He presented with mild psychomotor retardation and a blunted and restricted affect. His memory, judgment, and insight were all good.

Dr. Bongiovani's assessment is also supported by Biddle's therapy note dated the same day as the assessment (April 14, 2009). (R. 385.) Ladd reported socializing with relatives. He reported suffering from anxiety symptoms while shopping, but that he was somewhat successful in controlling his symptoms using techniques he learned in therapy.

Dr. Bongiovani's assessment was dated April 14, 2009. Therefore, it could not have relied on the additional medical evidence that became part of the record between then and the date of Ladd's hearing, May 27, 2010. Nevertheless, it was still proper for the ALJ to give great weight to her assessment, because the record does not indicate that Ladd suffered from worsening impairments subsequent to April 14, 2009. Rather, as discussed above, the record indicates that Ladd's condition continued to improve. Accordingly, I conclude that the ALJ applied the correct legal standards when evaluating the opinions of the nonexamining state

agency consultants, and that his decision was supported by substantial evidence.

### B. The ALJ's determination of Ladd's credibility

Ladd contends that the ALJ erred in evaluating his credibility because he failed to consider some of the factors required by the Commissioner's regulations and because his conclusion was not supported by the record as a whole. When making credibility findings, the ALJ must indicate which evidence he accepts and which he rejects when forming the basis for his findings. *See Schaudeck.*, 181 F.3d at 433. When a claimant's testimony about his activities of daily living is inconsistent with the available evidence, the ALJ is justified in finding the claimant to be less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 LEXIS 4, at **3-4 (SSR 1996).

The ALJ explained his credibility finding as follows:

> I find the claimant only partially credible. . . . He testified that he last had visual hallucinations in February; however, the last time he reported visual hallucinations was in October 2009. Treatment records in February 2010 noted no hallucinations and he reported that he has not heard voices. The claimant testified that he does not like crowds and mainly stays at home. However, the medical records show that in April 2010 he went to the movies twice and in March 2010 he reported that it was getting easier to go to the store (Exhibit B-11F). He testified that he never goes to family activities, but in December 2009 he reported that he was able to enjoy himself at the family Christmas gathering (Exhibit B-11F). He also testified to difficulty with concentration and finishing tasks, but he has not reported any problems following a story line when going to the movies and he plays video games with no reported problems (Exhibit B-11F).

(R. 17-18.) These findings and reasons comply with the requirements of SSR 96-7p. While

Ladd asserts that the ALJ was required to explicitly address each credibility factor, the Commissioner's regulations do not require this.  *See* 20 C.F.R. § 404.1529(a)-(c).

Furthermore, the ALJ's credibility determination is supported by substantial evidence of record.  As discussed above, the record contains ample evidence that would allow the ALJ to conclude that Ladd's symptoms were not as severe as he suggested, and that he was making good progress with treatment.

### C. The ALJ's finding that Ladd's schizoaffective disorder was a non-severe impairment

Ladd argues that the ALJ erred in holding that his schizoaffective disorder was not a severe impairment at Step Two.  At Step Two of the five-step sequential inquiry, the ALJ must determine whether the claimant has one or more medical impairments that are "severe."  *See Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); see also Social Security Ruling (SSR) 86-8, 1986 SSR LEXIS 15, at *6-7; SSR 85-28, 1985 SSR LEXIS 19, at *1.  An impairment is severe only if it significantly limits the claimant's physical or mental ability to work.  20 C.F.R. § 404.1521(b).  The claimant has the burden of showing that an impairment is severe.  *See Bowen*, 482 U.S. at 146 n.5.

I conclude that the ALJ properly found Ladd's schizoaffective disorder to be non-severe.  Dr. Covaci evaluated Ladd on May 6, 2010, three weeks before his administrative hearing.  In her progress note, she diagnosed major depressive disorder and anxiety disorder as diagnoses, the same as the severe impairments identified by the ALJ.  However, she also wrote "R/O Schizoaffective Disorder, bipolar type." (R. 395.)  "R/O" stands for "Rule Out," and is used by a psychiatrist who wants to note either that a patient is on the border of a certain illness without meeting the diagnostic criteria or that a certain diagnosis should be removed from consideration.

14

*See* DSM-IV DIAGNOSIS, available at http://everything2.com/title/DSM-IV+diagnosis (last visited August 6, 2013).  The state agency psychology consultant, Dr. Bongiovani, reviewed Ladd's records, also did not diagnose schizoaffective disorder.  (R. 294-303.)  Thus, I conclude that the ALJ was supported by substantial evidence when he determined that Ladd's schizoaffective disorder was not a severe impairment.

## IV. CONCLUSION

Having reviewed the evidence of record, I find the ALJ's decision applied the correct legal standards and was supported by substantial evidence.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this __26th__ day of August, 2013, it is RESPECTFULLY RECOMMENDED that Plaintiff's request for review be DENIED.

BY THE COURT:

 /s/ Lynne A. Sitarski
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL GALE LADD,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | NO.   12-4553 |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### O R D E R

AND NOW, this _____ day of _____, 2013, upon careful

consideration of the Report and Recommendation filed by United States Magistrate Judge Lynne

A. Sitarski, and upon independent review of the briefs filed by the parties, it is hereby

ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. Plaintiff's request for review is DENIED; and

3. Judgment shall be entered in this matter in favor of DEFENDANT.

BY THE COURT:

_____
EDUARDO C. ROBRENO,     J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

8/27/2013

RE:    LADD v. ASTRUE
          CA No. 12-4553

## NOTICE

      Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Sitarski, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge**.

      In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

      Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

                                      MICHAEL E. KUNZ
                                      Clerk of Court

                                      By: s/ Alexander Eggert
                                              Alexander Eggert, Deputy Clerk

cc:    Courtroom Deputy to Judge Robreno

civ623.frm
(11/07)