```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GALE LADD,                  :   CIVIL ACTION
                                    :   NO. 12-4553
          Plaintiff,                :
                                    :
     v.                             :
                                    :
MICHAEL J. ASTRUE,                  :
COMMISSIONER OF SOCIAL SECURITY,    :
                                    :
          Defendant.                :
```

**O R D E R**

**AND NOW**, this **16th** day of **May, 2014,** after careful and independent consideration of the Report and Recommendation[1] of United States Magistrate Judge Lynne A. Sitarski (ECF No. 15) and Plaintiff's Objections thereto (ECF No. 16), it is hereby **ORDERED** as follows:

(1)  Plaintiff's objections to the Report and Recommendation are **OVERRULED**;[2]

---

[1] Plaintiff Michael Gale Ladd ("Plaintiff") filed this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

This matter was submitted to Magistrate Judge Sitarski for a Report and Recommendation ("R&R"), which was returned on August 27, 2014. In the R&R, Magistrate Judge Sitarski recommends that Plaintiff's request for review be denied and judgment be entered in favor of Defendant.

[2] Plaintiff has filed nine objections to the R&R.

**1. Weight Accorded to Various Medical Opinions by ALJ (Objections 1-6)**

Plaintiff raises six specific objections to the Magistrate Judge's findings on the issue of weight given to medical opinions. See Pl.'s Objections at 1-6.

Objection 1

Plaintiff first objects with Magistrate Judge Sitarskis's finding that substantial evidence supports the ALJ's conclusion that the assessment of Plaintiff's therapist, Mindy Biddle, of Plaintiff's level of impairment, was "unsupported by medical findings and inconsistent with the record as a whole." Pl's Objections at 1. This objection essentially argues that some medical evidence, such as the prescription of Propanolol by Plaintiff's treating psychiatrist, Dr. Letitia Covaci, supports Ms. Biddle's assessment of Plaintiff's mental impairment, and further that other information on the record about Plaintiff's socialization patterns, therapy, treatment, and symptoms was consistent with Ms. Biddle's assessment.

This objection misses the mark, as the proper standard of review of the ALJ's decision on this point is to whether substantial evidence was present on the record to support the decision to discount Ms. Biddle's opinion, not whether evidence also existed to support a contrary decision. When evaluating non-medical opinion evidence, such as the mental assessment made by Plaintiff's therapist, an ALJ may consider whether the opinion is consistent with the record as a whole and whether the opinion is supported by medical evidence. See Stover v. Colvin, Civ. No. 12-531, 2013 WL 2446469 *3, (W.D. Pa. June 5, 2013) ("The standard of review . . . is not whether there is evidence to establish Plaintiff's position, but, rather, [] whether there is substantial evidence to support the ALJ's finding.") (citing Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989)).

The ALJ's conclusion that Biddle's assessment was inconsistent with the record as a whole was supported by substantial evidence. Biddle characterized Plaintiff's mental condition as extremely limited, with no useful ability to function, whereas the record before the ALJ also indicated that Plaintiff was able to do semi-skilled work for the past several years and that he was responding well to treatment. See ALJ Decision 9. Further, Ms. Biddle's own session notes indicated, contrary to her June 10, 2010 assessment, that Plaintiff was engaging in regular social activities with family, and that Plaintiff reported that he was "feeling better," "doing well," "enjoying experiencing more feelings," and was "improving his social skills." Compare R. 417-419, with R. 346, 350, 356, 360, 380, 384. Accordingly, the Court finds that substantial evidence on the record justified the ALJ's finding that Ms. Biddle's assessment was inconsistent with other evidence on the record. Therefore, Plaintiff's first objection is overruled.

Objection 2

Plaintiff's second objection is that Magistrate Judge Sitarski mischaracterized Ms. Biddle's treatment notes as indicating that "[Plaintiff's] social anxiety symptoms were less than extreme" when the statements cited in the R&R were actually relative statements indicating improvement, not objective statements indicating that his condition was no longer severe. See Pl.'s Objections at 2; see also R&R at 8-9. Plaintiff's argument—that statements indicating improvement do not necessarily prove that a condition has been cured—makes logical sense. However, Plaintiff's objection does not reach the ultimate issue of the case, whether the ALJ's rejection of Ms. Biddle's assessment due to inconsistencies with other evidence on the record, including independent opinions of treating medical sources, was supported by substantial evidence. As noted supra, the Court finds that the ALJ's finding of inconsistency between Ms. Biddle's assessment and the larger record was supported by substantial evidence. Accordingly, Plaintiff's second objection is overruled.

Objection 3

Plaintiff's third objection is that both Magistrate Judge Sitarski and the ALJ erroneously relied on evidence of Plaintiff's Global Assessment of Functioning ("GAF") rating in the treatment records of Plaintiff's psychiatrist, Dr. Covaci, as evidence of inconsistency between Ms. Biddle's assessment and the record as a whole. See Pl.'s Objections at 4; see also R&R at 9.

Plaintiff cites to a Social Security Administration ("SSA") Administrative Message 13066, dated July 26, 2013, which advises SSA adjudicators, including ALJs, "that the American Psychiatric Association ('APA'), in its recently published fifth edition of the Diagnostic and Statistical Manual [of Mental Disorders] (DSM-5) no longer includes GAF rating for assessment of mental disorders, and explains several concerns about [the use of] GAF scores." Pl.'s Objections at 4; see also Pl.'s Reply, Ex. 1, SSA Instruction on Appropriate Use of GAF Scores ("AM-13066"), July 22, 2013, ECF No. 17-1. This instruction indicates that ALJs may use GAF ratings as opinion evidence when assessing disability claims involving mental disorders, but that a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." AM-13066 at 5.

Plaintiff's claim that the ALJ's reliance on GAF ratings was contrary to SSA policy and therefore that the ALJ' decision was not supported by substantial evidence, fails for the following reasons:

3

First, Plaintiff cites to a statement of SSA policy that took effect nearly three years after the ALJ rendered a decision in this case. To the extent that AM-13066 changed the weight that an ALJ may accord to GAF evidence, Plaintiff has provided no evidence that the 2013 policy retroactively applied to the ALJ's 2010 decision. To the contrary, changes in the SSA regulations and corresponding policies have been held to apply only in cases decided after the enactment of the changed regulation and/or policy. See, e.g., Boone v. Barnhart, 353 F.3d 203, 208 n.14 (3d Cir. 2003).

Second, the ALJ's finding of an inconsistency between Ms. Biddle's assessment and other evidence on the record, including Plaintiff's GAF scores, is supported by substantial evidence even in light of AM-13066. The ALJ determined that Ms. Biddle's assessment of Plaintiff's mental condition was inconsistent with not only GAF ratings (which reflected an improvement in Plaintiff's condition over time,) but also qualitative evidence from a treating medical source, Dr. Covaci, that Plaintiff "was feeling better," and that his social anxiety and paranoia, while still present, were improving with therapy and medication. See R. 395 (Covaci Evaluation Notes, May 6, 2010), R. 397 (Covaci Evaluation Notes, Mar. 4, 2010); R. 399 (Covaci Evaluation Notes, Jan. 7, 2010).

Accordingly, Plaintiff's third objection is overruled.

<u>Objection 4</u>

Plaintiff's fourth objection also targets the ALJ's rejection of Ms. Biddle's assessment based on perceived inconsistencies between it and the record as a whole. Specifically, Plaintiff asserts that Biddle's assessment of Plaintiff's social impairment as "extreme," based Biddle's observations that Plaintiff had "experienced auditory and visual hallucinations in [her office's] waiting room," was not inconsistent with Plaintiff's other medical records. See Pl.'s Objections at 5-6. Rather, Plaintiff suggests this assessment was consistent with Plaintiff's diagnosis, by his psychiatrist, of "an ongoing condition that could result in hallucinations." Id. at 6.

Magistrate Judge Sitarski's R&R concludes that substantial evidence on the record supported the ALJ's finding that Ms. Biddle's assessment that "minimal progress" had been made to address Plaintiff's hallucinations, R. 418, was inconsistent with medical evidence on the record, including both Ms. Biddle and Dr. Covaci's treatment notes stating that Plaintiff "responded well with treatment and his condition was improving," ALJ Decision 9.

Plaintiff's objection again fails to address the probative issue. Regardless of whether or not Plaintiff's diagnosis during this period was

4

for a condition that could result in hallucinations, Biddle's description of "minimal" improvement conflicted with other medical evidence which indicated that Plaintiff's condition had been improving and that he had responded well to treatment. See R. 399 (Dr. Covaci, Jan. 4, 2010) (stating that Plaintiff "denies having problems with hallucinations,") R. 397 (Dr. Covaci, Mar. 4, 2010) (stating that Plaintiff reported that he was not "seeing anything" or "hear[ing] voices.") Substantial evidence on the administrative record to conflicted with Ms. Biddle's description of "minimal progress." Accordingly, Plaintiff's fourth objection is overruled.

Objection 5

Plaintiff also objects to the R&R's finding that the ALJ's decision to accord "great weight" to non-examining state physician Dr. Bongiovani's assessment of Plaintiff was supported by substantial evidence. See Pl.'s Objections at 6. Specifically, Plaintiff argues is that the record indicated that Plaintiff's condition deteriorated in the period between Dr. Bongiovani's consultation and the administrative hearing, and therefore that Dr. Bongiovani's assessment of Plaintiff's condition was inconsistent with the record as a whole at the time that the ALJ rendered his decision. See id. at 6-7. Additionally, Plaintiff argues that Dr. Bongiovani's assessment were not consistent with contemporaneous notes made by Dr. Covaci. Id. at 7-8.

An ALJ may consider the evidence of "non-examining" sources, including state agency medical consultants, as opinion evidence. See 404 C.F.R. §1527(e). In determining the weight of such opinion evidence, an ALJ must consider the six factors provided in § 1527(c): (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other relevant factors. An ALJ must provide a record of his analysis and explanation for the weight accorded to evidence. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

District Courts within the Third Circuit have on several occasions recognized that the "social security regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] grow weaker." Gonzalez v. Astrue, 537 F. Supp. 2d 644, 663 (D. Del. Feb. 28, 2008); see also Longo v. Astrue, Civ. No. 10-116, 2011 WL 2580503, *7 (W.D. Pa. June 28, 2011) ("The opinion of state agency reviewing physicians are weighted by stricter standards than treating sources."). These district courts have indicated that an ALJ, when determining the weight to accord to a non-examining medical opinion, must look closely at "whether, and how well, the opinion takes into account and explains the medical evidence of record, including the opinions of treating physicians." Colgan v. Astrue, Civ. No. 08-970, 2009 WL 3183087, at * 8 (W.D. Pa., Sept. 30, 2009) (quoting Gonzalez, 537 F. Supp. 2d at

663); see also Ortiz-Torres v. Callahan, Civ. No. 96-6535, 1997 WL 431016 *7 (E.D. Pa. July 15, 1996). Where a non-examining physician's opinion is rendered by "check[ing] a box or fill[ing] in a blank" without the accompaniment of "through written reports," such opinion evidence has been deemed "suspect." See Ortiz-Torres, 1997 WL 431016, at *7 (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

    Dr. Bongiovani's assessment of Plaintiff's condition, including a form Psychiatric Review, R. 294-311, and a written case analysis, R. 312-13, was prepared on April 14, 2009. This assessment made reference to Plaintiff's medical records, see R. 412, and was consistent with the notes of Plaintiff's treating physicians. For instance, Dr. Bongiovani's assessment of Plaintiff as "relaxed and talkative with affect somewhat restricted," R. 312, was consistent with Dr. Covaci's January 22, 2009 note that Plaintiff "appears more relaxed and more talkative . . . [and] his affect is still somewhat restricted," R. 330. Likewise, in both Dr. Bongiovani's assessment and Dr. Covaci's January 22, 2009 progress notes, Plaintiff was recorded as denying hallucinations. Compare R. 312 (Dr. Bongiovani) with R. 330 (Dr. Covaci). Dr. Bongiovani and Dr. Covaci also both noted that Plaintiff's cognitive function, memory, judgment, and insight were good. Compare R. 312 (Dr. Bongiovani) with R. 415 (Dr. Covaci). Likewise, Dr. Bongiovani's assessment of Plaintiff's anxiety condition—that he struggled with social anxiety but that he was improving with therapy and medication—was consistent with Dr. Covaci's progress notes. Compare R. 312 (Dr. Bongiovani) with R. 415 (Dr. Covaci, March 27, 2009) ("still struggling with some anxiety, especially in social situations"), R. 330 (Dr. Covaci, Jan. 22, 2009) ("feeling slightly better on present combination of psychotropic medications . . . still acknowledged having a difficult time around people).

    On this record, it is evident that there was substantial evidence to support a finding that Dr. Bongiovani's assessment was consistent with the treatment notes of Plaintiff's psychiatrist, Dr. Covaci. The ALJ was justified in giving Dr. Bongiovani's assessment great weight, as this assessment was consistent with the other significant medical evidence on the record, and because it included not only a "check the box" form, but a written assessment of Plaintiff's condition.

    Plaintiff also argues that the ALJ erred in according Dr. Bongiovani's assessment great weight because it was prepared more than a year before the ALJ's decision and thus could not take into account Plaintiff's medical records in the intervening period. There is case law supporting the point that a non-treating medical assessment should not be accorded great weight where it fails to consider medical evidence that was available at the time that the assessment was prepared. See Longo, 2011 WL 2580503, at *7 (rejecting an ALJ's decision to give great weight to a non-examining medical consultant, where the consultant apparently did not

consider a substantial medical records relating to one of claimant's two medical conditions); Moffatt v. Astrue, Civ. No. 10-226, 2010 WL 3896444 *6 (W.D. Pa., Sept. 30, 2010) ("An assessment provided by a non-examining medical consultant is of limited probative value where the record indicates that the consultant was unaware of counter-veiling medical evidence."). However, this case law does not support the further proposition that an assessment is rendered less weighty because it does not consider medical records that did not exist at the time the assessment was made.

While intervening changes in a claimant's medical condition could diminish the value of a medical assessment over time, the relevant question would then become whether the assessment's description of a claimant's subsequent symptoms and conditions remained accurate.

Plaintiff argues that such a change in his medical condition did occur during this period. He points to the fact that on August 6, 2009, Dr. Covaci recorded that Plaintiff was again was suffering from hallucinations. See R. 411 (August 6, 2009). However, the record shows that while Plaintiff's hallucinations did resurface for a period after Dr. Bongiovani's assessment, this symptom was treated in September of 2009 by an adjustment to Plaintiff's medication and did not return. See R. 409 ("[Plaintiff] admits that since a higher dose of Geodon, he has had no auditory or visual hallucinations.").

In the instant case, the fact that Dr. Bongiovani's 2009 assessment was largely consistent with Dr. Covaci's most recent description of Plaintiff's condition weighed in favor of the ALJ relying on Dr. Bongiovani's assessment.

For the foregoing reasons, Plaintiff's fifth objection is overruled.

Objection 6

Plaintiff's sixth objection asserts that Dr. Bongiovani's assessment that "[Plaintiff] is anxious around others and would be distracted by others and unable to concentrate around others or persist without symptoms during a workweek," R. 313, was consistent with Ms. Biddle's assessment of "extreme impairment," R. 418, which the ALJ discounted. Plaintiff also asserts that Dr. Bongiovani's description of Plaintiff's social anxiety is inconsistent with Dr. Bongiovani's assessment that "limitations in would be less than substantial in these areas." R. 313. For both these reasons, Plaintiff asserts, the ALJ erred in according Dr. Bongiovani's assessment great weight. See Objections at 8-9. Plaintiff's argument fails on both counts.

First, Plaintiff incorrectly suggests that Dr. Bongiovani's assessment of Plaintiff's social anxiety was the same as Ms. Biddle's

7

assessment. The ALJ discounted Ms. Biddle's final assessment as inconsistent with the greater record, including Ms. Biddle's own treatment notes, Dr. Covaci's notes, and Dr. Bongiovani's assessment, because it was unique in asserting that Plaintiff's condition was "extreme." R. 418. By contrast, Dr. Bongiovani's assessment, while indicating that Plaintiff still suffered anxiety around others which "lowered his ability to concentrate and persist at tasks," R. 412, suggested that this anxiety presented "less than substantial limitations," R. 313. This assessment is inconsistent with Biddle's assessment of "extreme" impairment based on Plaintiff's social anxiety, which the ALJ discounted, and is consistent with other evidence on the record.

Second, Dr. Bongiovani's conclusion that Plaintiff continued to suffer social anxiety, but that his limitations in this area were less than severe, did not necessitate a finding by the ALJ that the assessment was internally inconsistent, as both observed conditions could be true.

For these reasons, Plaintiff's sixth objection is overruled.

**2. The ALJ's Determination of Plaintiff's Credibility (Objections 7-8)**

Objection 7

Plaintiff's seventh objection asserts that the ALJ's determination of Plaintiff's credibility was inconsistent with the applicable legal requirements and was not supported by substantial evidence. Plaintiff claims that the proper legal standard for determining credibility of a claimant includes consideration of seven factors listed at 20 C.F.R. 404.1529(c)(3) as well as "objective medical evidence." See Objections at 9. Plaintiff also argues that Social Security Ruling 96-7p ("SSR 96-7p") provides that consideration of these factors is mandatory. See Objections 9.

Plaintiff correctly notes that the cited policy interpretation provides that an ALJ give "specific reasons" for his finding as to a claimant's credibility, "supported by evidence on the case record" and stated in "sufficiently specific" terms. See Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). However, neither this policy statement, nor § 404.1529(c)(3) (the governing regulation), mandates a specific finding as to each of the seven factors listed in § 404.1529(c)(3)(i) – (vi). The regulatory framework provides instead that an ALJ must consider "objective medical evidence," as well as the claimant's "own statements" and "other relevant evidence in the case record." SSR 96-7p.

The ALJ here considered Plaintiff's testimony about his impairments, but noted that he found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms to be inconsistent with

8

the record of his past reported behavior and symptoms, particularly how recently he had experienced hallucinations, his comfort with crowds outside the home, his comfort with family gatherings, and his difficulty with concentration and finishing tasks. See id. R. 17. Where a claimant's testimony about his activities of daily living and his prior symptoms is inconsistent with other evidence on the record, especially with notes from the claimant's treating physician, the ALJ is justified in finding the claimant less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002). The ALJ complied with the relevant regulatory requirements by explaining that inconsistencies between Plaintiff's testimony and the other medical evidence on the record were the reason for the finding of only partial credibility. For this reason, Plaintiff's objection on this point is overruled.

Objection 8

Plaintiff's eighth objection, that "substantial evidence does not support a determination that [Plaintiff] made so much progress with treatment that his symptoms were consistent with the ALJ's RFC assessment," appears in his Objections to the R&R as a heading without any supporting paragraphs. See Objections 10. Instead, Plaintiff merely cites back to the section of his brief containing his consideration of how the § 404.1529(c)(3)(i) – (vi) factors should have weighed in support of Plaintiff's credibility. In addition, Plaintiff cites the discussion in his second objection that treatment notes made by Ms. Biddle did not contradict her assessment that Plaintiff was still severely impaired due to his social anxiety. See Objections 2.

Plaintiff fails to state a distinct new argument, instead merely referencing points that appear elsewhere in his objections, and which were considered and rejected separately. For this reason, Plaintiff's eighth objection is overruled.

### 3. The ALJ's finding of Plaintiff's schizoaffective disorder as a non-severe impairment (Objection 9)

Objection 9

Plaintiff's ninth objection is that the ALJ's decision to find Plaintiff's schizoaffective disorder "non-severe," as it "appear[ed] to be stable with medication," R. 14, was not supported by substantial evidence on the record. See Objections 10.

The ALJ categorized Plaintiff's other mental impairments, major depressive disorder and anxiety disorder, as severe, noting Plaintiff's history of symptoms, medication, therapy notes and medical treatment history. See R. 13. However, the ALJ found that Plaintiff's schizoaffective

9

  (2) The Report and Recommendation is **APPROVED** and **ADOPTED**;

  (3) Plaintiff's request for review is **DENIED**;

  (4) Judgment is entered in this matter in favor of Defendant; and

  (5) The Clerk of Court shall mark this case **CLOSED**.

  **AND IT IS SO ORDERED.**

    /s/ Eduardo C. Robreno
    **EDUARDO C. ROBRENO, J.**

---

disorder was not a severe impairment in light of the ongoing diagnoses of Dr. Covaci, his treating psychiatrist. Dr. Covaci's notes indicated that while Defendant had been diagnosed with schizoaffective disorder, bipolar type, in June of 2008, and again in January and April of 2010, that in May of 2010 the diagnosis was "R/O ['rule out'] schizoaffective disorder." See R. 325 (April 1, 2010), R. 396 (May 6, 2010), at R. 399 (January 7, 2010), at R. 408 (June 27, 2008). These treatment notes also indicated that Plaintiff stopped suffering from hallucinations after an adjustment to his medication. See R. 328 (April 1, 2010) ("Client has had some visual and auditory hallucinations . . . his medication was adjusted and he reports that he is not having any more hallucinations at this time.").

  Plaintiff argues that the use of the "R/O" diagnosis by Dr. Covaci signaled that the treating physician was "trying to find the appropriate diagnosis for [Plaintiff's] psychotic symptoms," not that the diagnosis was being eliminated from consideration. Objections 10. However, this argument goes to the merits of Plaintiff's disability claim, not to whether the ALJ's categorization of the condition as "not severe" was supported by substantial evidence. The ALJ determined Plaintiff's schizoaffective disorder to be non-severe based on several pieces of evidence on the record, including the fluctuating diagnosis made by Dr. Covaci, as well as treatment records indicating that the primary symptom of this disorder—Plaintiff's hallucinations—appeared to be in control after an adjustment in his medication in the fall of 2009. See R. 14. The Court finds that substantial evidence supported the ALJ's categorization of Plaintiff's schizoaffective disorder as "not severe." Plaintiff's ninth objection is therefore overruled.